Docket No. 10-55946

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

COLUMBIA PICTURES INDUSTRIES, INC., et al.,

*Plaintiffs-Appellees*,

v.

GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of California, No. 06-CV-05578
Hon. Stephen V. Wilson, District Judge

## BRIEF OF GOOGLE INC. AS *AMICUS CURIAE* IN SUPPORT OF
## AFFIRMANCE

David H. Kramer
Bart E. Volkmer
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Andrew H. Schapiro
A. John P. Mancini
Brian M. Willen
MAYER BROWN LLP
1675 Broadway
New York, NY 10016
(212) 506-2500

*Counsel for* Amicus Curiae

FEBRUARY 8, 2011

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 29(c)(1) of the Federal Rules of Appellate Procedure, *amicus* Google Inc. states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES ....................................................................iii

INTEREST OF *AMICUS CURIAE* ....................................................... 1

INTRODUCTION ....................................................................................... 2

SUMMARY OF ARGUMENT ................................................................... 5

ARGUMENT ............................................................................................... 8

I.   THE STRICT STANDARD FOR INDUCEMENT LIABILITY
INCLUDES THE REQUIREMENT OF LEGAL
CAUSATION........................................................................................ 8

    A.   The *Grokster* Standard Deters Pirate Services While
Protecting Innovation And Legitimate Commerce. ................ 8

    B.   While The Defendants Engaged In Inducing Conduct,
The District Court Relied On Irrelevant Evidence And
Gave Inadequate Attention To Causation............................ 14

II.   INDUCEMENT DOES NOT TRUMP THE DMCA, BUT
THE DEFENDANTS HERE DO NOT QUALIFY FOR SAFE
HARBOR PROTECTION REGARDLESS OF WHETHER
THEY ARE LIABLE FOR INDUCEMENT................................... 20

    A.   The District Court Unnecessarily And Incorrectly
Addressed The Relationship Between The DMCA And
Judge-Made Rules Of Secondary Liability............................ 20

    B.   This Court Should Reject Plaintiffs' Misguided
Arguments About The DMCA's Knowledge Provisions. ....... 26

CONCLUSION......................................................................................... 30

CERTIFICATE OF COMPLIANCE ....................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arista Records LLC v. Lime Group LLC,*
   715 F. Supp. 2d 481 (S.D.N.Y. 2010) .................................................. 11

*Arista Records LLC v. Usenet.com, Inc.,*
   633 F. Supp. 2d 124 (S.D.N.Y. 2009) .................................................. 11

*Corbis Corp. v. Amazon.com, Inc.,*
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ...................................... 27, 28

*Doe v. Chao,*
   540 U.S. 614 (2004) .............................................................................. 12

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004)..................................................... 4, 22, 24

*Hendrickson v. eBay, Inc.,*
   165 F. Supp. 2d 1082 (C.D. Cal. 2001).................................................. 27

*Io Group, Inc. v. Veoh Networks Inc.,*
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) .................................... 24, 27, 28

*McGonigle v. Combs,*
   968 F.2d 810 (9th Cir. 1992)................................................................. 13

*MGM Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913 (2005) ..................................................................... *passim*

*Perfect10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007)..................................................... 4, 10, 23

*Perfect 10, Inc. v. Amazon.com, Inc.*
   CV-05-4753 (C.D. Cal. Nov. 4, 2008).................................................... 28

*Perfect10, Inc. v. CCBill LLC,*
   488 F.3d 1102 (9th Cir. 2007)...................................................... 27, 30

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007)............................................................. 9, 10

*Sony Corp. of America v. Universal City Studios*,
  464 U.S. 417 (1984) ........................................................................ 3, 14

*UMG Recordings, Inc v. Veoh Networks Inc.*,
  665 F. Supp. 2d 1099 (C.D. Cal. 2009)................................. 27, 28, 29

*Viacom Int'l Inc. v. YouTube, Inc.*,
  718 F. Supp. 2d 514 (S.D.N.Y. 2010) ............................................ 1, 26

## STATUTES & LEGISLATIVE HISTORY

17 U.S.C. § 512 ...................................................................................... 4

17 U.S.C. § 512(c)(2) ...................................................................... 20, 21

17 U.S.C. § 512(d) .......................................................................... 20, 22

17 U.S.C. § 512(d)(3) ........................................................................... 20

17 U.S.C. § 512(d)(1)(B) ..................................................................... 28

17 U.S.C. § 512(d)(1)(C) ..................................................................... 28

17 U.S.C. § 512(i)(1)(A) ...................................................................... 20

17 U.S.C. § 512(l) ................................................................................ 25

17 U.S.C. § 512(m)(1)........................................................................... 30

H.R. Rep. 105-551 (Part II) (July 22, 1998) ....................................... 23

S. Rep. 105-190 (May 11, 1998) .................................... 4, 23, 24, 30

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Restatement (Third) of Torts: Liability for Physical and Emotional
Harm (2010)......................................................................... 12, 18

## INTEREST OF *AMICUS CURIAE*

Google Inc. is one of the world's largest online service providers. Google is a leading search engine, and provides a wide range of Internet services—including online hosting, email, blogging tools, and discussion forums—that empower millions of people around the world to find, create, and communicate information.  Google relies on the safe-harbor provisions of the Digital Millennium Copyright Act (DMCA) in many different aspects of its business.  Google is also a defendant in a copyright-infringement case now pending in the Second Circuit.  In that case, which involves one of the plaintiffs in this case (Paramount Pictures) and some of the same plaintiffs' lawyers, the district court correctly held that Google and its subsidiary, YouTube, are protected by Section 512(c) of the DMCA against all of plaintiffs' claims, including a claim of inducement.  *See Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y. 2010).

Google has a strong interest in the proper application of both the DMCA safe harbors and judge-made rules of secondary copyright liability.  It submits this *amicus* brief because while the court below largely reached the correct result, some of its reasoning goes well

1

beyond what was necessary to resolve this case, and threatens to distort the law in ways that would make it more difficult for legitimate Internet service providers like Google and YouTube to offer innovative and useful services to their users. No person other than Google and its counsel, including parties to this action and their counsel, authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief.

## INTRODUCTION

This case raises questions about the standards for copyright inducement liability and for the application of the DMCA safe harbors. Those standards are extremely important to Internet businesses that, like Google, host user-submitted content, help users search the Internet for material of interest to them, provide links to various websites, documents, pictures, and videos, and route or transmit user communications and files.

The Supreme Court and Congress have recognized that in assessing claims of copyright infringement—particularly in a digitally networked environment—the protection of copyright must always be balanced against the fundamental importance of encouraging

technological innovation. As the Supreme Court has explained, "[t]he more artistic protection is favored, the more technological innovation may be discouraged; the administration of copyright law is an exercise in managing the tradeoff." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928 (2005).

In *Sony Corporation of America v. Universal City Studios*, 464 U.S. 417 (1984), therefore, the Court held that the sale of a product (the video cassette recorder) "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Id.* at 442. In *Grokster*, the Court reaffirmed the *Sony* safe harbor, which it described as leaving "breathing room for innovation and a vigorous commerce." 545 U.S. at 933. At the same time, *Grokster* held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps, is liable for the resulting acts of infringement by third parties." *Id.* at 936-37. This inducement standard is necessarily difficult to meet. If it were diluted, it would undermine *Sony*, and threaten legitimate innovators who develop and distribute new products and services.

With respect to online services in particular, Congress in 1998 created a set of statutory safe harbors when it enacted the DMCA, which shields qualifying Internet service providers from damages liability for all claims of copyright infringement. 17 U.S.C. § 512. The DMCA was passed in recognition that in "the ordinary course of their operations, service providers must engage in all kinds of acts that expose them to potential copyright infringement liability." S. Rep. 105-190, at 8 (May 11, 1998). The statute aims to "facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age" (*id.* at 1-2), by limiting online service providers' "legal exposure for infringements that may occur in the course of their activities." *Perfect10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). Google, and countless other companies whose businesses depend on technological innovation, rely on the protections that the DMCA provides.

While in agreement with the *result* reached in this case, Google is concerned that some of the reasoning offered by the district court (and

by the plaintiffs) goes too far and would upset the careful balance between copyright protection and technological innovation struck by the Supreme Court and Congress. Particularly because this case is not a hard one, it should be decided narrowly. This brief explains how this Court can affirm the core holdings of the decision below—that the defendants meet the standard for inducement liability and are not eligible for DMCA protection—in a way that will neither destabilize the law nor deter legitimate Internet businesses from providing socially and economically valuable services to the public.

## SUMMARY OF ARGUMENT

This case can easily be resolved without distorting the law to ensure liability for an unsavory defendant. The district court, however, went well beyond what was necessary to reach its holding, in ways that threaten to unduly expand infringement liability and undermine important legal protections for Internet services. Thus, while this Court should affirm the district court's ultimate conclusions, we respectfully submit that it should take a somewhat different path to reach those results.

On inducement, there is ample evidence to find that the defendants are liable under *Grokster* because they actively and intentionally promoted the use of their services for infringement. But some of the evidence that the district court cited to bolster that conclusion is not relevant to, and has no place in, the inducement inquiry. Relying on such evidence to find liability is unnecessary to condemn genuine pirate sites and threatens to deter a range of routine and unobjectionable conduct that legitimate Internet businesses engage in for the benefit of their law-abiding users.

The district court's inducement analysis also overlooked the important issue of causation. *Grokster* made clear that a defendant who engages in inducing conduct is liable "for the resulting acts of infringement by third parties." 545 U.S. at 919. As with other torts, liability for inducement attaches only to harms that were caused by the defendants' wrongful conduct. Plaintiffs seeking damages for inducement thus must show that the infringing acts at issue occurred *as a result of* the inducing activity they identify. That showing can readily be made in this case, given the evidence that the defendants intended and communicated that their services be used to infringe and

that their users overwhelmingly heeded that call. But, in other cases, the causation requirement will ensure that defendants do not face liability for infringing activity that is unrelated to their misconduct, whether because it occurred *before* any inducing activity or *after* the defendant stopped doing anything improper.

On the DMCA, the district court offered unwarranted dicta about the relationship between the DMCA and principles of secondary liability, inducement in particular. It should not have done so. Because the DMCA unambiguously protects qualifying service providers against *all* forms of copyright-infringement liability, application of the safe harbors requires an independent statutory analysis, one separate from the question whether the provider can be held liable for inducement (or any other form of infringement liability).

In this case, that statutory analysis clearly indicates that the defendants are not eligible for DMCA protection. This Court should resolve the case on that straightforward basis, without opining on hypothetical questions about the extent to which the safe harbors might apply to a service that has engaged in inducing conduct. In addressing the DMCA, moreover, the Court should not adopt plaintiffs' broad and

legally misguided argument—which has been rejected by every court that has addressed it—that a service provider can be disqualified from the safe harbors for having nothing more than generalized awareness of infringing activity occurring through its service.

## ARGUMENT

## I.   THE STRICT STANDARD FOR INDUCEMENT LIABILITY INCLUDES THE REQUIREMENT OF LEGAL CAUSATION.

### A.   The *Grokster* Standard Deters Pirate Services While Protecting Innovation And Legitimate Commerce.

*Grokster* articulates a strict standard for inducement designed to distinguish between true "pirate" services and those that operate with a legitimate purpose: "One who distributes a device with the object of promoting its use to infringe copyright, as shown by a clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 936-37. By its terms, this standard requires the plaintiff to show: (1) that the defendant acted with the *specific objective* of promoting the use of its product to infringe; (2) that the defendant furthered that objective by *affirmative measures* taken to foster infringement; and (3) that the infringement at issue *actually resulted* from the defendant's inducing conduct.

8

In their discussion of inducement, plaintiffs ignore *Grokster's* requirement of affirmative steps taken to foster infringement, which necessarily go beyond the neutral act of providing a service capable of both infringing and noninfringing uses. *See* Court of Appeals Case No. 10-55946 Docket ("Appeals Dkt.") #24 (Br. of Plaintiffs-Appellees) p. 21. But *Grokster* is replete with statements making clear that the Supreme Court did not intend inducement to be a kind of "thought-tort" under which liability could be triggered merely by an inchoate bad purpose or by equivocal conduct.[1]  Instead, as this Court has expressly held, to "establish inducement liability, it is crucial to establish that the distributors 'communicated an inducing message to their users.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 801 (9th Cir.

---

[1] *See Grokster*, 545 U.S. at 924 (emphasizing that each defendant "took **active steps** to encourage infringement"); *id.* at 931 (explaining that plaintiff must offer "evidence of stated or indicated intent to **promote** infringing uses"); *id.* at 935 (explaining that inducement requires "statements or actions **directed to promoting** infringement"); *id.* at 936 ("Evidence of **active steps** taken to **encourage** direct infringement" shows "an **affirmative intent** that the product be used to infringe," and thus can give rise to inducement liability); *id.* at 938 (describing evidence that the defendant "acted with a **purpose to cause copyright violations**"); *id.* (plaintiff must show "**that active steps were taken** with the purpose of bringing about infringing acts"); *id.* at 940 n.13 (explaining that there must be evidence "that the distributor intended **and encouraged** the product to be used to infringe") (emphases added).

9

2007) (citation omitted); *see also Perfect 10 v. Amazon*, 508 F.3d at 1170 n.11 ("Google's activities do not meet the 'inducement' test explained in *Grokster* because Google has not promoted its search engine specifically to infringe copyrights."). Plaintiffs say nothing about this binding Circuit precedent.[2]

The "classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." *Grokster*, 545 U.S. at 937. Evidence of such direct solicitation was integral to the holding in *Grokster* itself. *Id.* at 937-38 (observing that both defendants "communicated a clear message" to users that they should use defendants' technology to violate copyright); *id.* at 924-25 ("each one clearly voiced the objective that recipients use [the software] to download copyrighted works, and each took active

---

[2] Plaintiffs refer to the *Grokster* Court's discussion of certain "internal communications and advertising designs" that may not have been broadcast to the public. 545 U.S. at 938. But that discussion establishes merely that internal communications can sometimes illuminate a defendant's intent and thus may bear on the *culpable-purpose* element of inducement. *Id.* at 925 n.7. It did not eliminate the separate requirement—on which this Court has insisted—that the plaintiff "establish that the distributors 'communicated an inducing message to their . . . users.'" *Visa*, 494 F.3d at 801. Indeed, purely internal communications have never been found sufficient to establish the "affirmative steps taken to foster infringement" required for inducement liability (*Grokster*, 545 U.S. at 936-37).

steps to encourage infringement"). In subsequent cases where inducement has been found, such evidence has likewise played a central role. *Arista Records LLC v. Lime Group LLC*, 715 F. Supp. 2d 481, 495-96, 510-12 (S.D.N.Y. 2010); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 152-53 (S.D.N.Y. 2009). As discussed below, there is clear evidence in this case that the defendants directly solicited their users to infringe.

In formulating the inducement rule, the Supreme Court was "mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential." *Grokster*, 545 U.S. at 937. The Court thus explained that "mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves." *Id*. Instead, liability depends on "purposeful, culpable expression and conduct." *Id*. Only by insisting on such a high bar for a showing of inducement could the Court be assured that its rule "does

nothing to compromise legitimate commerce or discourage innovation having a lawful promise." *Id.*

Of equal importance is the requirement that there be a causal connection between the defendant's inducing conduct and the resulting acts of infringement about which the plaintiff complains. The Court repeatedly made clear that an inducer is liable "for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 919, 937; *see also id.* at 941 (evidence must show "a purpose *to cause* and profit from third-party acts of copyright infringement) (emphasis added). To face liability, therefore, the defendant must take action intended to cause copyright violations, and it is liable for any infringements that occur *as a result* of those inducing actions.

Beyond being an express aspect of the *Grokster* standard, this causation requirement reflects a fundamental principle of tort law: a defendant faces damages liability only for injuries that were caused by its wrongful conduct. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 26 (2010) ("Tortious conduct must be a factual cause of harm for liability to be imposed."); *e.g.*, *Doe v. Chao*, 540 U.S. 614, 621 (2004) (describing the "traditional understanding" that

"tort recovery requires . . . wrongful act plus causation reaching to the plaintiff"); *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir. 1992) (describing the "the basic tort principle that a plaintiff must demonstrate both 'but for' and proximate causation") (citation omitted).

Under these established principles—and contrary to what plaintiffs here suggest (Appeals Dkt. #24 (Br. of Plaintiffs-Appellees) pp. 24-26)—even if a defendant induces a particular act or acts of infringement, it is not therefore strictly liable for any and all acts of infringement that may occur on its services or through the use of its technology. The defendant is instead liable only for infringements that have a sufficient causal relationship to its inducing conduct. One obvious example is infringement that occurs *before* the alleged instances of inducement. It would make no sense to hold that a defendant is liable for such infringement merely because it *subsequently* engaged in misconduct. Yet that would appear to be the consequence of plaintiffs' absolutist position. Similarly, infringing acts that have no connection to the misconduct for other reasons—whether because the defendant reformed its behavior sufficiently to sever any causal link between its earlier inducement and later instances of infringement or because the

actual third-party infringer can be shown to have acted wholly independently of any inducing conduct—cannot be laid at the defendant's feet.

A contrary rule would mean that one stray statement that induces infringement, made on a single day to a circumscribed audience, could potentially leave an innovator strictly liable for every infringement committed by every customer into the indefinite future. Where a multi-purpose technology is concerned, this single misstep would deny the law-abiding public access to the technology, and thus effectively "enlarge the scope of [copyright's] statutory monopolies to encompass control over an article of commerce that is not the subject of copyright protection." *Sony*, 464 U.S. at 421.

### B.   While The Defendants Engaged In Inducing Conduct, The District Court Relied On Irrelevant Evidence And Gave Inadequate Attention To Causation.

There was ample evidence in the record here to support a finding that the defendants engaged in inducing conduct as *Grokster* requires, *i.e.,* that they took affirmative steps to foster infringement. *Grokster*, 545 U.S. at 936-37. Preeminent in this regard was what the district court described as the "variety of undisputed evidence that Defendants

14

disseminated a message 'designed to stimulate others' to commit infringements.'" ER0053 (citation omitted). Even though much of the record below is sealed and unavailable to Google, the public record includes evidence of the defendants directly soliciting and encouraging users to infringe:

- Fung created a "Box Office Movies" feature that encouraged users to upload illegal copies of the most popular movies in the theaters at the time. ER0053.

- Fung invited users to upload and download illegal copies of the movie *Matrix Reloaded*. District Court Case No. 06-CV-05578 Docket ("District Dkt.") #326-2 pp. 31-33 (Reply SUF ¶¶ 26, 28).

- Fung created a link to an illegal copy of the film *Lord of the Rings: Return of the King* and instructed users, "if you are curious, download this." District Dkt. #326-2 pp. 34 (Reply SUF ¶29).

- Fung "specifically requested that a user upload a dot-torrent file for the film *Alien*," received confirmation that a user had done so, thanked the user, and then joked, "so many movies to watch, so little time." District Dkt. #326-3 pp. 69-70 (Reply SUF ¶59).

The evidence also shows defendants actively assisting users' infringement efforts:

- Fung unilaterally moved a user's "nice list" of movie files to a forum where it could be "share[d]." District Dkt. #326-2 pp. 35-36 (Reply SUF ¶ 30).

- Fung helped a user burn to DVD a pirated copy of the file *The Pirates of the Caribbean*, directed a user how to extract and play a file containing a pirated copy of the movie *Lord of the Rings: Return of the King*, and provided advice to a user seeking to

extract a file containing the film *The Incredibles*. ER0041; ER0056; District Dkt. #326-3 pp. 76-77, 79 (Reply SUF ¶¶68, 69, 72).

- In public posts on Isohunt, Fung provided technical assistance to a user who had "just downloaded" the film *Kill Bill* and another who could not "get sound on Lord of the Rings 3." ER0056; District Dkt. #326-3 p. 78 (Reply SUF ¶70).

This evidence taken together satisfies the *Grokster* requirement that a defendant have disseminated an inducing message to users. Indeed, as the district court noted, this is the "classic instance of inducement" (ER0054) (citation omitted), and the defendants thus may properly be held liable for any infringements that can be shown to have resulted from their inducing conduct.

Some of the evidence cited by the district court in its inducement analysis, however, does not meaningfully bear on the inquiry. For example, the court below described how the defendants' websites presented information about files in browseable categories, provided additional information about those files, placed them into categories based on commonly searched terms, and used an indexing program that automatically matched filenames with specific terms. ER0054; ER0061. That is what virtually all online directories and Internet search engines do. There is nothing at all illicit about such conduct, nor does it suggest

16

that a service is intentionally seeking to encourage copyright infringement.

Using such evidence to support a finding of inducement is dangerous because these technical processes alone are unremarkable. Relying on factors such as these to suggest that an Internet service may be liable for inducement would deter a wide range of routine and socially valuable conduct that legitimate service providers perform. This case is not a difficult one, and there is no need for the Court to explore the outer limits of inducement liability. It certainly should not accept plaintiffs' invitation to indulge in dicta that could "compromise legitimate commerce or discourage innovation having a lawful promise." *Grokster*, 545 U.S. at 937.

The other problem with the district court's inducement ruling is not what it said, but what it did not say. Having held that the defendants "engaged in 'purposeful, culpable expression and conduct' aimed at promoting infringing uses of the websites," the court appears to have suggested that the defendants thus were necessarily liable for any infringing acts that plaintiffs alleged. ER0063. That approach left out an important step in the analysis: legal causation. As discussed

17

above, even when a defendant has engaged in inducing conduct, it faces liability only for the infringements that were actually caused by that wrongful conduct.  A plaintiff must make that showing of causation before it can recover.  *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 28 ("the plaintiff has the burden to prove that the defendant's tortious conduct was a factual cause of the plaintiff's harm").

In a case like this, that showing should not be difficult.  As discussed above, there is compelling evidence that the defendants not only intended that their services be used for infringement, but that they repeatedly and unequivocally communicated that message to their users.  And it appears that users of defendants' websites heeded that message in overwhelming proportion.  Indeed, just from the public record, there appears to be substantial evidence establishing that defendants' inducing conduct specifically caused the infringement of some of plaintiffs' copyrighted works.  District Dkt. #326-3 pp. 69-70 (Reply SUF ¶59) (specifically encouraging upload of the film *Alien*).

The fact that causation is readily established here, however, does not mean that the requirement is unimportant or that it might not

18

make a difference in other, harder cases.  For example, a meaningful causation requirement would ensure that a defendant does not face liability for infringement that occurred on their services *before* any inducement occurred.  Likewise, it would also protect innovators against claims that once they (or certain of their employees or agents) engage in an isolated instance of inducing conduct, they are forever liable for any and all infringement that occurs using their technology— even if they have reformed their behavior and made serious efforts to undo an original inducing message, and even if it is implausible that future infringers ever were influenced by the inducing message.  Those results would not only be unfair to innovators, but would also undermine *Sony* and *Grokster* by allowing copyright owners to prevent law-abiding members of the public from having access to technologies with lawful potential.  *Grokster*, 545 U.S. at 937.

## II. INDUCEMENT DOES NOT TRUMP THE DMCA, BUT THE DEFENDANTS HERE DO NOT QUALIFY FOR SAFE HARBOR PROTECTION REGARDLESS OF WHETHER THEY ARE LIABLE FOR INDUCEMENT.

### A. The District Court Unnecessarily And Incorrectly Addressed The Relationship Between The DMCA And Judge-Made Rules Of Secondary Liability.

As with its treatment of inducement, the district court's discussion of the DMCA reached the right result but in a problematic way. The court complicated a straightforward DMCA case by wading into an unnecessary discussion of the relationship between the statutory safe harbor and judge-made principles of secondary liability, including inducement. There is a better path for this Court to follow.

The record includes evidence showing that the defendants are not entitled to protection under Section 512(d) of the DMCA because they failed its basic requirements: (1) registering a DMCA agent; (2) reasonably implementing a repeat-infringer policy; and (3) responding expeditiously to take-down notices. 17 U.S.C. §§ 512(c)(2), 512(d)(3), 512(i)(1)(A). The record shows that:

- Defendants' DMCA agent designation is missing information required by §512(c)(2)(a), including address and phone number,

and bears no indicia of having been received by the Copyright Office.  District Dkt. # 322-7 p. 11 (Parker Opp. Decl. Ex. A).[3]

•    Defendants abandoned any pretense of DMCA compliance as of January 22, 2007, proclaiming that "we have moved servers to Canada and [are] no longer subject to US DMCA laws," opting instead for a "copyright policy and procedure modeled after the DMCA" because the DMCA is "mostly fair."  District Dkt. #322-7 p. 13 (Parker Opp. Decl. Ex. B).

•    Fung "banned" plaintiffs' copyright enforcement agent, BayTSP, after receiving "thousands of DMCA notices."  ER0496 (Fung Opp. Decl. ¶53).

•    Defendants removed BayTSP from its "blacklist" and "then almost immediately re-added" it to the list for "consuming the resources of no less than 11 'normal' users of isohunt.com."  ER0252 (Parker Opp. Decl. ¶20).

•    Defendants automatically blocked plaintiffs' DMCA notices and sent back the following message: "Email from your domain rejected due to attempted mailbombing."  ER0248-249 (Parker Opp. Decl. ¶10).

•    Fung blocked plaintiffs' copyright counsel from gaining access to defendants' websites.  District Dkt. #326-4 p. 105 (Reply SUF ¶102).

This evidence, taken together, excludes the defendants from the

safe harbor regardless of whether they are independently liable for

---

[3] Counsel for *amicus curiae* searched the Copyright Office website's DMCA-agent-designation page (as well as historical versions available at www.archive.org), but was unable to find any designation associated with the defendants.  *Cf.* 17 U.S.C. § 512(c)(2) (Register of Copyrights obligated to maintain a directory of DMCA agents for public inspection, including through the Internet).

inducement.  *See, e.g.*, *Ellison*, 357 F.3d at 1080 (failure to accept and adequately process DMCA notices can disqualify service provider from safe harbors).  Accordingly, it is unnecessary in this case to address whether there might be some other case in which a service that meets the standard for inducement might nevertheless be protected by the DMCA.  That question was not addressed in *Grokster* (which was not a DMCA case), and no appellate court has ever opined on it.  This Court should not be the first to do so in a case where the question is purely hypothetical.

In addition to being unnecessary, the district court's discussion of the relationship between the DMCA and secondary liability was misguided.  The court suggested that "if a defendant *is* liable for secondary infringement, the defendant *is not* entitled to [DMCA] immunity; if a defendant *is not* liable for secondary infringement, the defendant *is* entitled to [DMCA] immunity."  ER0064 (emphases in original).  That is wrong.  By its terms, the DMCA bars monetary liability "for infringement of copyright" without limitation.  17 U.S.C. § 512(d).  The DMCA was enacted on the explicit understanding that some service providers who might be held secondarily liable at common

22

law would nevertheless be protected by the safe harbor; after all, one hardly needs a safe harbor if one is not liable in the first instance.

The legislative history, moreover, makes clear that the statute's "limitations of liability apply *if the provider is found to be liable* under existing principles of law" and that they "protect qualifying service providers from liability for *all* monetary relief for direct, *vicarious and contributory* infringement." H.R. Rep. 105-551 (Part II), at 50 (July 22, 1998); S. Rep. 105-190, at 19-20 (emphases added). (Inducement is a form of contributory liability. *Grokster*, 545 U.S. at 930.) The district court's *dicta* about the relationship between the DMCA and secondary liability thus is at odds with the fundamental purpose and operation of the safe-harbor provisions. It is also contrary to this Court's cases, which hold unambiguously that "the limitations on liability contained in 17 U.S.C. § 512 protect secondary infringers as well as direct infringers." *Perfect 10 v. Amazon,* 508 F.3d at 1175.

Plaintiffs argue that applying the DMCA to inducement claims is bad policy because it suggests, at least hypothetically, that a service provider could receive safe-harbor protection while simultaneously encouraging infringement. But that theoretical example is not a reason

23

to disregard Congress' intent in passing the DMCA safe harbors—to "provide '**greater certainty** to service providers concerning their legal exposure for infringements that may occur in the course of their activities.'" *Ellison*, 357 F.3d at 1076 (quoting S. Rep. 105-190, at 20 (1998)) (emphasis added). Online services often face dubious inducement claims, based on isolated statements that may not reflect the services' actual purpose and operation. Under the district court's approach, opportunistic litigants would doubtless see such claims as an easy way to force online service providers into expensive litigation. But a service that demonstrates full DMCA eligibility in response to such charges should not have its safe-harbor protection left in limbo until it goes to the considerable burden and expense of defending against an inducement claim. *Cf. Io Group, Inc. v. Veoh Networks Inc.*, 586 F. Supp. 2d 1132, 1141 (N.D. Cal. 2008) (finding it "more efficient" to address DMCA safe harbor before turning to question of liability and granting summary judgment for service provider because the DMCA applied). Such a regime would be contrary to the statute and would discourage innovation in ways that run counter to the DMCA's purpose.

In short, the question whether a defendant is eligible for DMCA protection is distinct from whether the defendant is liable for inducement under *Grokster*.    Those two questions should not be conflated, as the district court appears to have done.    ER0071 ("Defendants are liable for inducement.  There is no safe harbor for such conduct.").    Determining DMCA eligibility instead requires courts to interpret and apply the various statutory prerequisites, which are not identical to the elements of judge-made secondary infringement claims. *Cf.* 17 U.S.C. § 512(*l*) (providing that service provider's failure to qualify for safe-harbor protection "shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing").    It may well be that certain facts establishing that the defendant is liable for inducement also bear on the DMCA inquiry.    (Conversely, the same facts that demonstrate a defendant's entitlement to the safe harbors may help establish that it is not an inducer.)    But it is a mistake to conclude that secondary liability (whether for inducement or otherwise) *in and of itself* removes a defendant from the safe harbor.

25

Here, as discussed, the requisite DMCA analysis is straightforward and points clearly against safe-harbor protection. Precisely because this is such an easy case, this Court should avoid any suggestion that inducement (or any other secondary-liability principle) somehow categorically trumps DMCA protection. Such a suggestion is unnecessary to affirm the decision below and would significantly undermine the statutory safe harbor.

**B.    This Court Should Reject Plaintiffs' Misguided Arguments About The DMCA's Knowledge Provisions.**

Plaintiffs urge this Court to make broad rulings about the DMCA (its knowledge provisions, in particular) that are legally incorrect, unnecessary to resolve this case, and that would distort the law for a host of legitimate service providers who depend on DMCA protection. The Court should resist that invitation.

Plaintiffs take issue with the district court's recent holding in the *Viacom v. YouTube* case (now pending on appeal before the Second Circuit) that the DMCA requires "knowledge of specific and identifiable infringements of particular individual items." *Viacom*, 718 F. Supp. 2d at 523. They argue that the statute "forecloses an interpretation that knowledge of specific infringing items is required." Appeals Dkt. #24

26

(Br. of Plaintiffs-Appellees) p. 42. As plaintiffs themselves note (*id.* at 40), there is no reason for this Court to reach that issue here. But plaintiffs' argument is wrong on the merits.

An unbroken line of cases makes clear that the DMCA's knowledge standards are specific and focus on the particular material that the plaintiff is suing about. *See Io Group*, 586 F. Supp. 2d at 1149; *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1108 (W.D. Wash. 2004); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1093 (C.D. Cal. 2001). Plaintiffs' argument was rejected not just in *YouTube*, but also in *UMG Recordings, Inc v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1111 (C.D. Cal. 2009) (appeal pending), which expressly held that it is not sufficient for a copyright owner to show "a provider's general awareness of infringement." Plaintiffs' position is also contrary to this Court's decision in *CCBill*, which rejected a reading of the DMCA's red-flag knowledge test that would have imposed "investigative duties on service providers" to determine whether specific websites were enabling infringement. *Perfect10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1114 (9th Cir. 2007). Indeed, plaintiffs cannot cite a single case holding that a

service provider's generalized awareness of infringing activity is enough to disqualify it from the safe harbors.[4]

Plaintiffs' argument is also inconsistent with the text and structure of the statute. The DMCA does not focus on knowledge of infringement alone, but rather on what a service provider must do upon obtaining knowledge: it must "act[] expeditiously to remove, or disable access to, the material." 17 U.S.C. § 512(d)(1)(C). The statutory duty triggered by knowledge—whether "actual knowledge" or awareness of "facts or circumstances form which infringing activity is apparent"— is a precise one. It is a duty to promptly remove "the material" that the

---

[4] In its brief discussion of the DMCA's knowledge standards, the district court suggested that "Defendants have not satisfied their summary judgment burden by identifying facts showing that Defendants were 'not aware of facts or circumstances from which infringing activity is apparent.'" ER0066-67 (quoting 17 U.S.C. § 512(d)(1)(B)). The court cited no authority for its suggestion that defendants bear the burden of proving their lack of knowledge, and that is not the law. Courts have consistently found that to disqualify an otherwise-eligible service provider from the safe harbors, the *plaintiff* must come forward with evidence that the provider had knowledge of particular infringing material, but declined to expeditiously remove it. *Perfect 10, Inc. v. Amazon.com, Inc.*, CV-05-4753, Dkt. #221, slip op. at 8 (C.D. Cal. Nov. 4, 2008) ("Although A9 has the ultimate burden of proving its affirmative defense, it is Perfect 10's burden to show that A9 had actual knowledge of infringement within the meaning of Section 512(c)."); *see also UMG*, 665 F. Supp. 2d at 1110; *Io*, 586 F. Supp. 2d at 1148-49; *Corbis*, 351 F. Supp. 2d at 1107-09.

provider knows to be infringing.  It is not some amorphous obligation to investigate.  And that statutory duty is dischargeable *only* where the service provider knows with particularity what material it must remove.  Generalized awareness that some unspecified material might be infringing is not enough to allow the service provider to do what the statute requires and thus cannot be enough to satisfy the DMCA's knowledge provisions.

In arguing otherwise, plaintiffs point to *Grokster* (Appeals Dkt. #24 (Br. of Plaintiffs-Appellees) pp. 43-44), but that case said nothing about the DMCA.  *Grokster* did not even say that generalized knowledge is sufficient outside the DMCA.  To the contrary, the Supreme Court made clear that "mere knowledge of infringing potential or of actual infringing uses would ***not*** be enough here to subject a distributor to liability." *Grokster*, 545 U.S. at 937 (emphasis added).  While *Grokster* found that an "actual ***purpose*** to cause infringing use" can give rise to inducement liability even without specific knowledge (*id*. at 934 (emphasis added)), that provides no support for the very different claim that general knowledge disqualifies a service provider from the DMCA safe harbor.

Finally, plaintiffs invoke the concept of willful blindness, but they ignore Section 512(m) of the DMCA. That provision expressly states that a service provider's entitlement to safe-harbor protection may not be conditioned on "monitoring its service or affirmatively seeking facts indicating infringing activity." 17 U.S.C. § 512(m)(1). Thus, although the statute does not allow service providers to willfully ignore specific instances of "readily apparent infringement" (*UMG*, 665 F. Supp. 2d at 1108), it imposes no obligation to "investigate possible infringements, monitor its service, or make difficult judgments as to whether conduct is or is not infringing" (S. Rep. 105-190, at 52). The DMCA instead, as this Court has recognized, places "the burden of policing copyright infringement," including "identifying the potentially infringing material," "squarely on the owners of the copyright." *CCBill*, 488 F.3d at 1113. It is not, and as a matter of law cannot be, willful blindness for a service provider to adhere to those principles.

## CONCLUSION

For the reasons given above, the judgment of the district court should be affirmed.

Respectfully submitted.

<table>
<tr><td></td><td>s/ Andrew H. Schapiro</td></tr>
<tr><td>David H. Kramer</td><td>Andrew H. Schapiro</td></tr>
<tr><td>Bart E. Volkmer</td><td>A. John P. Mancini</td></tr>
<tr><td>WILSON SONSINI GOODRICH & ROSATI</td><td>Brian M. Willen</td></tr>
<tr><td>650 Page Mill Road</td><td>MAYER BROWN LLP</td></tr>
<tr><td>Palo Alto, CA 94304</td><td>1675 Broadway</td></tr>
<tr><td>(650) 493-9300</td><td>New York, NY 10016</td></tr>
<tr><td></td><td>(212) 506-2500</td></tr>
</table>

*Counsel for* Amicus Curiae

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it is written in 14-point Century Schoolbook font, and with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed R. App. P. 29(d), because it contains 5,533 words, excluding the portions exempted under Fed. R. App. P. 32(a)(7)(B)(iii).

DATED:  February 8, 2011

s/ Andrew H. Schapiro
Andrew H. Schapiro
MAYER BROWN LLP
1675 Broadway
New York, NY 10016
(212) 506-2500
aschapiro@mayerbrown.com
Counsel for *Amicus Curiae*

32

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 8, 2011.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Jared Robinson Smith
Rothken Law Firm
Suite 280
3 Hamilton Landing
Novato, CA 94949

s/ Deborah Grubbs
Deborah Grubbs